IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-cv-00318

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC, | |
| *Plaintiff*, | |
| v. | |
| 2.419 ACRES, MORE OR LESS, IN JOHNSTON COUNTY, NORTH CAROLINA, LOCATED ON PARCEL IDENTIFICATION NO. 03-Q-02-001-D, AND DESCRIBED AS BEING A PORTION OF THAT CERTAIN 126.5 ACRES DESCRIBED IN THE NORTH CAROLINA GENERAL WARRANTY DEED RECORDED IN DEED BOOK 4559, PAGE 775; LESS AND EXCEPT 5.6 ACRES AS DESCRIBED IN DEED BOOK 921, PAGE 199; LESS AND EXCEPT 31.5 ACRES AS DESCRIBED IN DEED BOOK 776, PAGE 179; LESS AND EXCEPT 5.455 ACRES AS DESCRIBED IN DEED BOOK 683, PAGE 238; LESS AND EXCEPT 1.2 ACRES AS DESCRIBED IN DEED BOOK 1158, PAGE 663; LESS AND EXCEPT 1.11 ACRES AS DESCRIBED IN DEED BOOK 1357, PAGE 395; LESS AND EXCEPT 1.11 ACRES AS DESCRIBED IN DEED BOOK 1362, PAGE 318, | **COMPLAINT IN CONDEMNATION**<br><br>15 U.S.C. § 717f(h); Fed. R. Civ. P. 71.1 |
| and | |
| PETER WAVERLY EDWARDS<br>As Trustee of the Edwards Joint Declaration of Trust dated February 16, 2015<br>3004 Watergate Lane<br>Virginia Beach, VA 23452, | |

and

LINDA RAE EDWARDS
As Trustee of the Edwards Joint Declaration
of Trust dated February 16, 2015
3004 Watergate Lane
Virginia Beach, Virginia 23452,

*Defendants*.

## Nature of the Case

1. Plaintiff Atlantic Coast Pipeline, LLC ("Atlantic"), pursuant to its power of eminent domain as authorized by Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), and Federal Rule of Civil Procedure 71.1, files this action for (i) the taking of certain interests in real property; (ii) if later requested, immediate possession of the easements described herein; and (iii) the ascertainment and award of just compensation to the owners of interest in real property, Peter Waverly Edwards as trustee of the Edwards Joint Declaration of Trust dated February 16, 2015, Linda Rae Edwards as trustee of the Edwards Joint Declaration of Trust dated February 16, 2015, and any other interested parties (collectively, the "Owners").

## Jurisdiction and Venue

2. This Court has original jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), because: (a) Atlantic is the holder of a certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC") for the construction of an interstate natural gas pipeline that crosses West Virginia, Virginia, and North Carolina; (b) Atlantic, despite negotiation efforts, has been unable to acquire by contract, or has been unable to agree with the Owners as to the compensation to be

paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas; and (c) the amount claimed by the Owners exceeds $3,000.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the interests in the real property that Atlantic seeks to condemn are located within the Eastern District of North Carolina.

**Parties**

4. Atlantic is a Delaware limited liability company with its principal office located at 120 Tredegar Street, Richmond, Virginia 23219. Atlantic is an interstate natural gas company as defined by the Natural Gas Act, 15 U.S.C. § 717a(6), and, as such, is authorized to construct, own, operate, and maintain pipelines for the transportation of natural gas in interstate commerce. Atlantic's transportation of natural gas in interstate commerce is subject to the jurisdiction and approval of FERC.

5. The Owners are record owners of that certain tract of land identified as Parcel Identification No. 03-Q-02-001-D, composed of 77.789 acres, more or less, located in Johnston County, North Carolina and being more particularly described as being a portion of that certain 126.5 acres described in the North Carolina General Warranty Deed recorded in Deed Book 4559, Page 775; less and except that certain 5.6 acres as described in Deed Book 921, page 199; less and except that certain 31.5 acres as described in Deed Book 776, page 179; less and except that certain 5.455 acres as described in Deed Book 683, page 238; less and except that certain 1.2 acres as described in Deed Book 1158, page 663; less and except that certain 1.11 acres as described in Deed Book 1357. Page 395; less and except that certain 1.11 acres as described in Deed Book 1362, page 318, of the public records of said County (the "Property"). The Property is depicted in **Exhibit 1**.

6. There may be other persons who claim an interest in the property to be condemned whose names are currently unknown to Atlantic because they could not be ascertained by a diligent inquiry. These persons will be made parties to this action as permitted by Federal Rule of Civil Procedure 71.1(c)(3).

**Facts**

7. Atlantic is in the process of constructing an approximately 600-mile underground pipeline and related facilities for the purpose of transporting natural gas from West Virginia to Virginia and North Carolina (the "ACP Project").

8. The ACP Project will measure approximately 42 inches in diameter in West Virginia and Virginia, and 36 inches in diameter in North Carolina. Certain extensions of the ACP Project will measure 20 inches in diameter from Northampton County, North Carolina to the City of Chesapeake, Virginia and 16 inches in diameter in Brunswick County, Virginia and Greensville County, Virginia.

9. Natural gas transported by the ACP Project will serve multiple public utilities and is necessary to satisfy the growing energy needs of consumers in Virginia and North Carolina.

10. Atlantic filed an application for a certificate of public convenience and necessity with FERC on September 18, 2015, FERC Docket No. CP15-554-000, in which it sought permission to construct the ACP Project and attendant facilities. On October 13, 2017, FERC issued a certificate of public convenience and necessity (the "FERC Certificate") authorizing Atlantic to construct and operate the ACP Project. A copy of the FERC Certificate is attached as **Exhibit 2**.

11. FERC found that the ACP Project will "primarily serve natural gas demand in Virginia and North Carolina." *See* Ex. 2, at 35, ¶ 79.

12. FERC also found that the "public at large will benefit from increased reliability of natural gas supplies." *See* Ex. 2, at 35, ¶ 79.

13. As a result, the ACP Project "serves a 'public use'" as determined by FERC. *See* Ex. 2, at 34, ¶ 79.

14. Atlantic must begin construction of the ACP Project as soon as possible to ensure completion within FERC's deadline. *See* Ex. 2.

15. The FERC-approved route of the ACP Project crosses the Property. A map depicting the route of the ACP Project is attached as **Exhibit 3**.

16. Atlantic seeks to construct a portion of the ACP Project on the Property. The ACP Project cannot be constructed until Atlantic acquires certain permanent easements (the "Permanent Easements"), temporary easements (the "Temporary Easements"), and an easement for an access road (the "Access Road Easement") (collectively the "Easements") on the Property. The Easements are necessary for constructing, maintaining, operating, altering, testing, replacing, and repairing the ACP Project.

17. A plat depicting the size and nature of the Easements and the ACP Project's route across the Property is attached hereto as **Exhibit 4**.

18. The Permanent Easements to be taken on the Property include a permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove or abandon the ACP Project and appurtenant equipment and facilities, as well as the right to change the location of the installed pipeline within the area of the Permanent Easement as may be necessary or advisable.

19. The Temporary Easements will enable Atlantic to construct the ACP Project and engage in restoration or clean-up activities. The Temporary Easements are requested as of the date

of authorized entry onto the Property and their use is required until all work, including restoration, is complete. The Temporary Easements will be effective and condemned for a period not to exceed five (5) years following Atlantic's possession of the Easements.

20. The Access Road Easement will provide Atlantic with a mode of access to the ACP Project and related facilities, as well as the ability to transport the personnel, materials, and machinery needed to construct the ACP Project. The Access Road Easement to be taken on the Property includes use of both existing and new roads; the right to construct a permanent access road with a width not to exceed thirty feet; and the right to improve any existing access roads to a width not to exceed thirty feet.

21. Atlantic also seeks to acquire the right of ingress and egress to and from and through the Easements; the right to transport pipe, vehicles, machinery, persons, equipment, or other materials to and from and through the Easements, and the right of access through any existing roads on the Property.

22. Atlantic also seeks the right to fell trees and clear brush or other vegetation as necessary or convenient for the safe and efficient construction, operation, or maintenance of the ACP Project or to maintain safe and efficient access to and from the ACP Project.

23. The Owners shall retain the right to use the Property in any manner that will not interfere with the use and enjoyment of Atlantic's rights under the Easements. Specifically, the Owners shall not, without the prior written consent of Atlantic: (a) change the depth of cover or otherwise undertake earthmoving or construction within the Permanent Easements; (b) place or permit to be placed any temporary or permanent structure or obstruction of any kind, including but not limited to buildings, swimming pools, sheds, concrete pads, mobile homes, trees, telephone or electric poles, water or sewer lines, or similar structures, within the Permanent Easements; (c) store

or operate any heavy equipment in the Permanent Easements, except the use of typical farming equipment; and (d) construct ponds or lakes in a manner that would flood the Permanent Easements.

24. Atlantic has negotiated with the Owners and has made several efforts to acquire the Easements by contract.

25. An Agent of Atlantic (the "First Agent") began negotiations with Owner Peter Edwards in October 2015 and provided him with an initial offer in a letter dated October 23, 2015.

26. Throughout the remainder of 2015, the First Agent communicated with Owner Peter Edwards in an attempt to negotiate and discuss the acquisition of the easements.

27. On March 2, 2016, the First Agent spoke via telephone to Owners' counsel to negotiate the acquisition of the easements.

28. On April 29, 2016, the First Agent met in person with Owners' counsel to negotiate further. From May through August 2016, the First Agent and another agent of Atlantic (the "Second Agent") contacted Owners' counsel to negotiate the acquisition of the easements.

29. On or about September 13, 2016 and September 16, 2016, the Second Agent met in person with Owners' counsel to negotiate further.

30. Throughout September 2016 and October 2016, the Second Agent made multiple attempts in person and via telephone to obtain Owners' counter offer letter from Owner's counsel.

31. The Second Agent contacted counsel for Owners via telephone and in person multiple times throughout December 2016, January 2017, and February 2017 in an attempt to negotiate.

32. An offer letter was mailed to counsel for Owners dated March 17, 2017.

33. The Second Agent and another agent of Atlantic (the "Third Agent") made multiple attempts throughout the spring, summer, and fall of 2017, in person and via telephone to contact counsel for Owners in an attempt to negotiate.

34. Between November 2017 and April 2018, the Third Agent made multiple attempts, in person, via telephone, and via email correspondence, to contact counsel for Owners and Owners directly in an attempt to negotiate.

35. On May 17, 2018, the Third Agent spoke with counsel for Owners via telephone to negotiate.

36. On or about June 1, 2018, the Third Agent hand delivered an updated plat, a copy of which is attached hereto as **Exhibit 4**, to counsel for Owners along with a new offer to purchase the Easements.

37. In a letter dated June 6, 2018, Atlantic sent the Owners a final offer, along with a copy of the plat attached hereto as **Exhibit 4**.

38. On June 15, 2018, the Third Agent emailed the Owners' counsel to further inquire about the easement acquisition.

39. On June 27, 2018, the Third Agent attempted to meet with the Owners' counsel in-person, but Owners' counsel was not available to meet.

40. To date, Atlantic and the Owners have been unable to agree on the compensation to be paid and the terms of the Easements. To date, the Owners have not provided a counteroffer to Atlantic. Thus, despite these negotiations, Atlantic has been unable to acquire the Easements by contract.

41. Pursuant to the authority granted to Atlantic by Congress in Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), Atlantic now seeks to take by eminent domain the Easements over the Property as depicted herein and in **Exhibit 4**.

**WHEREFORE**, Atlantic respectfully requests that this Court:

A. Enter an Order of Judgment of Taking by Eminent Domain as to the Easements as described herein;

B. If later requested, grant Atlantic immediate possession of the Easements in the form of a preliminary injunction prior to the determination of just compensation upon deposit with the Court of a sum of money representing the value of such Easements as determined by Atlantic's appraisal or land rights valuation analysis;

C. Ascertain and award just compensation to the Owners for the taking of the Permanent Easements;

D. Ascertain and award just compensation to the Owners for the taking of the Temporary Easements;

E. Ascertain and award just compensation to the Owners for the taking of the Access Road Easement; and

F. Grant such other relief as may be just and proper.

This the 29th day of June, 2018.

/s/ Henry L. Kitchin, Jr.
Henry L. Kitchin, Jr.
N.C. State Bar No. 23226
MCGUIREWOODS LLP
Post Office Box 599 (28402)
Wilmington, North Carolina 28401
Telephone:  (910) 254-3800
Facsimile:   (910) 254-3900
Email:         hkitchin@mcguirewoods.com

Dhamian A. Blue
N.C. State Bar No. 31405
Blue LLP
205 Fayetteville Street
Raleigh, North Carolina 27601
Telephone:  (919) 833-1931
Facsimile:   (919) 833-8009
Email:         dab@bluellp.com

*Of Counsel:*

John D. Wilburn
Email: jwilburn@mcguirewoods.com
Richard D. Holzheimer, Jr.
Email: rholzheimer@mcguirewoods.com
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102
Telephone:   (703) 712-5000
Facsimile:    (703) 712-5050

*Counsel for Atlantic Coast Pipeline, LLC*